# Nos. 25-1496(L), 25-1562

# United States Court of Appeals
## *for the*
# Fourth Circuit

WEST NECK COMMUNITY ASSOCIATION, INC.,

*Plaintiff-Appellee/Cross-Appellant*,

– v. –

JBWK, LLC,

*Defendant-Appellant/Cross-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

# RESPONSE BRIEF OF APPELLEE AND
# OPENING BRIEF OF CROSS-APPELLANT
# WEST NECK COMMUNITY ASSOSCIATION, INC.

Mark R. Baumgartner
Jeffrey A. Hunn
Scott B. Ingram
PENDER & COWARD, PC
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Phone: (757) 490-6293
Fax: (757) 497-1914
mrb@pendercoward.com
jhunn@pendercoward.com
singram@pendercoward.com

*Counsel for Appellee/Cross-Appellant*

CP Counsel Press   (800) 4-APPEAL • [813121]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1496__          Caption: __West Neck Community Association, Inc. v. JBWK, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__West Neck Community Association, Inc.__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ _____        Date: _____ May 13, 2025 _____

Counsel for: West Neck Community Assoc., Inc. _____

- 2 -

[Print to PDF for Filing]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF JURISDICTION ....................................................................... 1

STATEMENT OF ISSUES ................................................................................... 1

STATEMENT OF CASE ...................................................................................... 2

SUMMARY OF ARGUMENT ............................................................................ 12

STANDARD OF REVIEW ................................................................................. 14

ARGUMENT ...................................................................................................... 15

    I.     The Association is Entitled to Enforce the Declaration Against
           JBWK ........................................................................................... 15

        A.    The Plain Language of the Declaration Authorizes the
              Association to Enforce the Declaration Against JBWK ........... 17

        B.    JBWK's Interpretation of the Declaration is Contrary to
              its Express Language ................................................................ 23

            i.    Sections 6.1 and 8.4 of the Declaration Do Not
                  Eliminate the Obligation of Other Owners of
                  Property to Follow the Declaration ............................... 23

                  a.    JBWK Fails to Challenge the District
                      Court's Specific Holding ..................................... 23

                  b.    JBWK Misreads Section 6.1(a) of the
                      Declaration .......................................................... 25

                  c.    JBWK's Interpretation of Section 8.4(a)
                      Impermissibly Adds Language to the
                      Declaration .......................................................... 27

                  d.    JBWK improperly seeks to use specific
                      provisions of the Declaration to negate
                      general provisions of the Declaration even
                      where they do not conflict and can be
                      readily harmonized ............................................ 30

ii.      Section 11.3 of the Declaration Does Not Limit the Association's Enforcement Power..............................32

C.      The Declaration Provides for Implied Enforcement Powers....................................................................................36

II.      JBWK Did Not Satisfy the Explicit Contractual Requirements to Become the Declarant .....................................39

A.      The District Court Erred in Ruling on Summary Judgment that JBWK Took Title for the Purpose of Development and/or Sale.........................................39

B.      The District Court Erred in Ruling on Summary Judgment that JBWK was Designated as a Declarant in a Recorded Instrument ...........................45

i.      JBWK is Not the Declarant Because it Failed to Properly Record an Instrument Designating it as the Declarant.................................................46

ii.      The August 2022 Amendments are Valid ......................48

III.      The District Court Erred in Barring the Association's Enforcement of the Declaration For Failure to Mediate, While Also Denying the Association's Motion to Dismiss Seeking Mediation, and Refusing to Bar JBWK's Unmediated Claims ..........49

CONCLUSION...............................................................................................54

REQUEST FOR ORAL ARGUMENT ....................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Spirit Ins. Co. v. Owens*,
    261 Va. 270 (2001) ........................................................................... 16, 26

*Ames v. American Nat'l Bank of Portsmouth*,
    163 Va. 1 (1934) .....................................................................................17

*Appalachian Reg'l Healthcare v. Cunningham*,
    294 Va. 363 (2017) .................................................................................30

*Ausherman v. Bank of Am. Corp.*,
    352 F.3d 896 (4th Cir. 2003).................................................................41

*Babcock & Wilcox Co. v. Areva NP, Inc.*,
    292 Va. 165 (2016) .................................................................................16

*Berry v. Klinger*,
    225 Va. 201 (1983) .................................................................................16

*Carpenter v. Gate City*,
    185 Va. 734 (1946) .................................................................................16

*City of Virginia Beach v. WC Capital, LLC*,
    Case No. 2:21-cv-00372.....................................................................5, 11

*CNX Gas Co. LLC v. Rasnake*,
    287 Va. 163 (2014) ...................................................................... 16, 22, 33

*Dominion Transmission, Inc. v. Precision Pipeline, Inc.*,
    2013 U.S. Dist. LEXIS 159164 (E.D. Va. November 5, 2013).................... 52, 53

*Fishman v. LaSalle Nat'l Bank*,
    247 F.3d 300, 6 Fed. Appx. 52 (1st Cir. 2001)....................................33

*General Analytics Corp. v. CAN Ins. Co.*,
    86 F.3d 51 (4th Cir. 1996).....................................................................40

*Globe Co. v. Bank of Boston*,
    205 Va. 841 (1965) .................................................................................16

*Grayson O. Co. v. Agadir Int'l LLC*,
   856 F.3d 307 (4th Cir. 2017) .......................................................... 24, 36

*Huggins v. Lueder*,
   No. 1:19-CV-0433-CAP, 2020 U.S. Dist. LEXIS 145784
   (N.D. Ga. July 8, 2020) .........................................................................40

*Jacobs v. N.C. Admin. Office of the Courts*,
   780 F.3d 562 (4th Cir. 2015) ................................................................43

*Levine v. Employers Ins. Co. of Wausau*,
   887 F.3d 623 (4th Cir. 2018) ........................................................ 28, 29

*Mount Aldie, LLC v. Land Trust of Va., Inc.*,
   293 Va. 190 (2017) ...............................................................................33

*Plunkett v. Plunkett*,
   271 Va. 162 (2006) ...................................................................... 17, 31

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ..............................................................25

*Shipton v. Balt. Gas & Elec. Co.*,
   109 F.4th 701 (4th Cir. 2024) ...............................................................15

*Sigley v. ND Fairmont, LLC*,
   129 F.4th 256 (4th Cir. 2025) ...............................................................15

*Southerland v. Estate of Southerland*,
   249 Va. 584 (1995) ...............................................................................28

*Southern R. Co. v. Franklin & P.R. Co.*,
   96 Va. 693 (1899) .................................................................................38

*Sully Station II Community Ass'n v. Dye*,
   259 Va. 282 (2000) ...............................................................................15

*Sweely Holdings, LLC v. R. SunTrust Bank*,
   296 Va. 367 (2018) ...............................................................................16

*Tattoo Art, Inc. v. TAT Int'l, LLC*,
   711 F. Supp. 2d 645 (E.D. Va. 2010) .......................................... 52, 53

*Taylor v. Northam*,
   300 Va. 230, 862 S.E.2d 458 (2021) .....................................................35

*Tm Delmarva Power v. NCP of Va.*,
 263 Va. 116 (2002) ................................................................ 15, 16, 23

*Tolan v. Cotton*,
 572 U.S. 650 (2014) ...................................................................... 41

*United States ex rel. Ubl v. IIF Data Solutions*,
 650 F.3d 445 (4th Cir. 2011) ......................................................... 25

*Wilson v. Holyfield*,
 227 Va. 184 (1984) ........................................................................ 28

**Statutes:**

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1332(a) ............................................................................ 1

Va. Code § 15.2-2201 ...................................................................... 45

**Rules:**

Fed. R. Civ. P. 30(b)(6) .................................................................... 44

Fed. R. Civ. P. 56 .............................................................................. 43

Fed. R. Civ. P. 56(a) ......................................................................... 14

**Other Authorities:**

5 Corbin on Contracts § 24.15 ..................................................... 30-31

Restatement (First) of Property § 5 (Am. L. Inst. 1936) ................... 34

# STATEMENT OF JURISDICTION

This Court has jurisdiction to hear the present appeal under 28 U.S.C. § 1291 because this case involves the appeal of a final decision of a district court. (JA972). The district court had jurisdiction under 28 U.S.C. § 1332(a) because (1) JBWK alleged that the cost of complying with the Governing Documents exceeds $75,000 (JA167) and (2) the parties are diverse because the Association is a Virginia corporation while JBWK is a New Mexico limited liability company (JA181).

# STATEMENT OF ISSUES

1. Whether the District Court correctly ruled that a community association can enforce the applicable restrictions against an owner of non-residential property in the community.

2. Whether the District Court correctly ruled that a community association declaration's limitation for making objections to zoning changes within the community did not limit a community association's ability to enforce its community wide standards against a property owner in violation of such standards.

3. Whether the District Court erred in concluding, on summary judgment, that JBWK was the successor Declarant despite JBWK not satisfying the criteria set forth in the Declaration and the law.

4. Whether the District Court erred in finding, on summary judgment, that the Association could not enforce the requirement that JBWK maintain the Golf Course

Parcels because the Association did not comply with the dispute resolution procedures in the Governing Documents as to other subsequently arising claims.

5. Whether the District Court erred in not requiring both parties to submit to mediation prior to asserting new claims not previously raised.

## STATEMENT OF CASE

This case primarily concerns disputes over six parcels of land (the "Golf Course Parcels") located within the West Neck community, a residential community for ages fifty-five and older located in the City of Virginia Beach, Virginia. JA680-681. The Golf Course Parcels originally served as a golf course known as the Signature at West Neck, but the Golf Course Parcels have since been operating as a commercial tree farm run by JBWK, LLC ("JBWK"). JA680. The Golf Course Parcels are subject to zoning proffers that limit their use to a golf course. JA544, JA654, JA706.

West Neck was formed on March 27, 2000, by Baymark Construction Corporation ("Baymark") upon the recording of the Declaration of Covenants, Conditions, and Restrictions for West Neck (the "Declaration") with the Clerk's Office of the City of Virgina Beach. JA681-682. The purpose of the Declaration is to "provide a governance structure and a flexible system of standards and procedures for the overall development, expansion, administration, maintenance, and preservation of West Neck as an age-restricted master planned community." JA55.

Baymark also executed and recorded multiple governing documents that are attached to the Declaration, which are collectively referred to as the Governing Documents. JA56. The Governing Documents include: the Declaration and any Supplemental Declarations, the Association's Articles of Incorporation and By-Laws, the Initial Restrictions and Rules, the Architectural Guidelines of the Declaration, and the Association's Board of Directors' resolutions ("Governing Documents") JA56.

Pertinent to this appeal, the Initial Restrictions and Rules, which are attached as Exhibit C to the Declaration, state that "[t]he Properties shall be used only for residential, recreational, and related purposes…consistent with this Declaration and any Supplemental Declaration." JA125. The Initial Restrictions and Rules specifically prohibit operating any business or trade on any of the properties within West Neck. JA127 (Restriction and Rule (2)(r)). The Restrictions and Rules also state, "Prohibited Conditions: The following shall be prohibited at the Properties: (a) Plants, animals, devices, or other things of any sort whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may dimmish or destroy the enjoyment of the Properties…." JA128 (Restriction and Rule 3(a)).

The Declaration established Baymark as the "Declarant" of West Neck, and allowed for a successor to become a Declarant if such successor "takes title to any portion of the property [at West Neck] for the purpose of development and/or sale and who is designated as Declarant in a Recorded instrument" executed by the

preceding Declarant.  JA55, JA59. The Declarant has various rights under the Declaration.  JA125.

The Declaration also created the Association.  JA55.  Specifically, the Declaration reads, "An integral part of the development plan is the creation of West Neck Community Association, Inc. [the "Association"],…to own, operate, and/or maintain various common areas and community improvements and to administer and enforce this Declaration and the other Governing Documents referenced in this Declaration."  JA55. The Declaration provides the Association with various easements over the Golf Course Parcels as necessary to access any of the bodies of water on the Golf Course Parcels for purposes of maintenance and irrigation.  JA103.

The Declaration specifies that all property within West Neck "shall be owned, conveyed, and used subject to all of the provisions of this Declaration, which shall run with the title to such property."  JA55, JA937.  Section 1.2 of the Declaration further states, "This Declaration, as it may be amended, shall have perpetual duration and shall be enforceable by Declarant, the Association, any Owner, and their respective legal representatives, heirs, successors, and assigns."  JA55-56.

After the execution of the Declaration, Baymark, as the Declarant, transferred ownership of residential lots and homes to various third parties, it transferred common areas to the Association, and it transferred the six parcels constituting the Golf Course Parcels to its affiliate Baymark Golf, LLC, to be used as a golf course

in accordance with the zoning proffers. JA937. However, on April 28, 2020, the Golf Course Parcels were purchased by WC Capital, LLC ("WCC") at a foreclosure sale, who then leased the Golf Course Parcels to JBWK for the purpose of operating a commercial tree farm on the Golf Course Parcels. JA826, JA711, JA939.[1] According to JBWK's business plan, JBWK is "an agri-business" that intended to make land available "for lease for tree farming and crop production." JA567. JBWK sought to carry out its argi-business by entering into an agreement with a nursery company to plant hundreds of trees on the Golf Course Parcels for cultivation and resale. JA186.

Following the foreclosure sale, and after all lots within the West Neck development were transferred to third parties, Baymark (who was the Declarant) was administratively terminated by the Virginia State Corporation Commission on November 30, 2020. JA486.

After WCC acquired the Golf Course Parcels it ceased maintaining them and weeds began to take over. The City of Virginia Beach filed suit to force maintenance of the Golf Course Parcels. *See City of Virginia Beach v. WC Capital, LLC*, Case No. 2:21-cv-00372, ECF 1-2; JA730. The Association also sought to enforce the Declaration's requirement that WCC maintain the Golf Course Parcels and "the

---

[1] WCC and JBWK are both single-member limited liability companies whose sole member is David LaClair, a resident of Florida. JA160, JA168.

Association and WC Capital participated in mediation in September of 2021 with respect to the Association's complaint that the grass was not being cut frequently enough" JA47.

On November 15, 2021, a "Deed of Assignment and Bill of Sale" (the "First Assignment") was executed between Richard Foster, individually as trustee for Baymark and Baymark Golf, and JBWK. JA864, JA940. The First Assignment included an incorrect entity because it listed JBWK as a Virginia limited liability company when in-fact JWBK is a New Mexico limited liability company. JA864. The First Assignment purportedly assigned "all Declarant rights under the Declaration" to JBWK. JA868, JA940. JBWK, however, did not own any property in West Neck at this time as it was only leasing the Golf Course Parcels from WCC. JA41.

Shortly thereafter, JBWK started its tree farming operations in December 2021 when it planted approximately 700 hundred trees on the Golf Course Parcels. JA732. JBWK planted these trees on the property without receiving authorization from the Association. JA44. JBWK, without approval from the Association, also erected a fence between the Golf Course Parcels and "certain other adjoining properties." JA43. Meanwhile, no one was performing landscaping and

maintenance, and the grass and other vegetation began to grow excessively throughout the Golf Course Parcels.  JA716-722.

With hundreds of trees planted on West Neck's former golf course, counsel for the Association sent an email to JBWK on December 29, 2021 notifying its attorney that JBWK had planted the numerous trees on the property without giving any notice to the Association.  JA467. Counsel for the Association also sent a letter to JBWK on December 29, 2021, asserting that JBWK had violated the Governing Documents.  JA470.  The letter indicated that the Association would "institute the necessary action to cause [the] property to be brought into compliance with the governing documents" if the violation was not corrected before January 6, 2022.  JA470. Neither JBWK nor WCC took any action to remedy the violations on the Golf Course Parcels, and the Association filed a Warrant-in-Debt on February 15, 2022 alleging a violation of the Governing Documents and asserting a claim for $900 for the noncompliance.  JA475.

The Association also mailed another letter to WCC requesting that the Golf Course Parcels be brought into compliance with the Governing Documents, and the letter indicated that a Due Process hearing had been scheduled for March 16, 2022. JA323. Specifically, the Association informed WCC that the Property was not in compliance with the Architectural Guidelines and the Community-Wide Standard for West Neck because WCC had failed to take care of the grass or otherwise

maintain the bushes, trees, shrubberies, and greeneries throughout the property. JA323. Further, the letter reiterated that WCC had planted trees, changed the Golf Course Parcels's landscape, and erected a fence without the required Association approval. JA323. The Association non-suited the Warrant-in-Debt, since it had been erroneously filed prior to the Due Process Hearing, and conducted a Due Process hearing, which WCC attended. JA178, JA685, JA733. The Due Process Hearing concluded that JBWK was failing to maintain its Golf Course Parcels. JA14.

On June 2, 2022, JBWK and Baymark executed the "Corrected Deed of Assignment and Bill of Sale" (the "Second Assignment") which finally named JBWK as the correct entity, listing JBWK's corporation status to a New Mexico limited liability company. JA867. JBWK and WCC entered into a Merger Agreement on June 14, 2022; however, the Merger Agreement was not recorded in the land records. JA612, JA943. None of the assignments were indexed against any parcels subject to the Declaration other than the Golf Course Parcels. JA325, JA328.

On August 16, 2022, the Association executed two amendments to the Declaration, and two days later both amendments were recorded in the land records for the City of Virginia Beach, properly indexed with reference to all parcels subject to the Declaration. JA191. When the amendments were made, Baymark was still terminated as an entity with the State Corporation Commission. JA731.

Furthermore, no one had informed the Association that it claimed to have taken over as the Declarant. JA612.[2]

The Association and JBWK soon began discussing the possibility of, again, mediating the issues concerning (1) JBWK's "intent to plant more trees on the property" and (2) "the bigger picture of what should be done with the property." JA530-531. JBWK indicated that it would be willing to waive mediation of the first issue (i.e., its intention to plant more trees), and that it would be open to mediating the "big picture" issue. JA531. The parties attempted to schedule a mediation for September 9, 2022, but they were unable to mediate on that date. JA540. The parties ultimately did not mediate the issues as counsel for the Association stated that it was his "understanding…that the parties have agreed to waive the mediation…." JA537.

The Association filed its second Warrant-in-Debt against JBWK on September 28, 2022 seeking $900 for JBWK's violations of the Declaration and requesting an injunction forcing JBWK to comply with the Governing Documents. JA534-535. On November 2, 2022, JBWK filed its own lawsuit against the Association in the Eastern District of Virginia seeking a declaratory judgment that it could exercise the Declarant rights, that the Association's 2022 amendments were

---

[2] JBWK claimed that it was the Declarant for the first time during the pendency of this lawsuit. JBWK admits that it did not inform the Association that it had purportedly assumed the Declarant's status at the time that the amendments were created. JA612.

not effective, and that it was not subject to enforcement actions brought by the Association. JA687. JBWK also sought a permanent injunction "prohibiting the Association from entering onto the [Golf Course Parcels] without JBWK's express permission, or otherwise interfering with JBWK's Declarant rights under the Declaration." JA687. Meanwhile, JBWK also had the Association's state court action removed to federal court. JA688. The Association then filed its Complaint to provide a more definite allegation of its claims. JA688.

In June of 2023, the District Court consolidated the two cases, and *sua sponte* designated the Association as the plaintiff and ordered JBWK to "file an amended Answer…includ[ing] as counterclaims any claims it intends to continue to prosecute that were originally brought in [JBWK's own lawsuit]." JA688. Pursuant to the Court's direction and unilateral reorganization of the pleadings and parties, JBWK then filed its Answer which included its prior requests for declaratory and injunctive relief as counterclaims. JA174-330.

On July 18, 2023, while the case was still pending before the District Court, JBWK and Baymark executed the "Confirmation of Assignment" to "clarify and confirm" that JBWK had become "the successor 'Declarant.'" JA647. JBWK did not record the "Confirmation of Assignment" with the Clerk of the Virginia Beach Circuit Court until October 3, 2023. JA652. Again, the document was only indexed against the Golf Course Parcels. JA647.

JBWK moved for summary judgment on September 14, 2023, and the Association also moved for summary judgment on November 7, 2023. JA543, JA653. The Association argued, among other things, that JBWK did not comply with the dispute resolution provisions of the Declaration before it filed suit seeking declaratory and injunctive relief. JA692. The District Court ruled against the Association and stated that the "Declaration's dispute resolution provisions refer to the rights of a party to file a lawsuit, not a counterclaim in an existing lawsuit."[3] JA692. The District Court ruled against JBWK when it held that the Association can bring an enforcement action against JBWK. JA700.

At the Court's request, the parties each filed renewed motions for summary judgment, and on March 31, 2025 the District Court rendered a final decision in a memorandum opinion. JA936. Specifically, the District Court held that JBWK's use of the Golf Course Parcels as a commercial tree farm was an impermissible use under the Declaration, and that the Association could bring an enforcement action against JBWK although the Association could not recover against JBWK in this specific case. JA947-948. In addition, the District Court stated that "no later than July 21, 2022, JBWK became the Declarant and holder of the Declarant rights under

---

[3] Importantly, the Court on its own, reorganized the pleadings and parties and declared that JBWK's claims would be considered a counterclaim even though they truly were intended to be filed in a complaint. *Compare* JA180-197, *with City of Virginia Beach v. WC Capital, LLC,* Case No. 2:21-cv-00372, ECF 1-2.

the Declaration," and the District Court determined that the Association's 2022 Amendments were therefore invalid. JA947. The District Court also ruled that JBWK's use of the Golf Course Parcels is restricted to only residential, recreational, or related purposes, and that JBWK cannot use the property in any way that it chooses. JA966.

## SUMMARY OF ARGUMENT

JBWK admitted that its property was subject to the Declaration. JA11, JA41. Consequently, it was proper (and unremarkable) for the District Court to find that the Association, which is charged with enforcing the provisions of the Declaration had authority to enforce the Declaration against JBWK. Further, the District Court properly found that section 11 of the Declaration, which contains purported restrictions on a person's right to "protest, challenge, or otherwise object to" changes in use of certain property, did not apply to the Association's right (and obligation) to enforce the terms of the Declaration.

While the District Court ruled in favor of the Association on the main issue of this lawsuit, the District Court also committed two errors which require correction by this Court. First, the District Court erred when it found that JBWK had become the Declarant. Specifically, the District Court prematurely ruled at summary judgment that JBWK (by virtue of its predecessor entity WCC) had acquired the Golf Course Parcels for the purpose of development and/or sale. The District Court

mistakenly presumed that the Association did not dispute this point, when in fact the Association brought forward testimony from JBWK's corporate deposition that unequivocally contradicted JBWK's argument. Furthermore, the District Court erroneously found on summary judgment that JBWK had recorded an instrument designating it as the Declarant before July 2022. This error led the District Court to find that the Association's August 2022 amendments were invalid because the Association did not obtain approval from the Declarant, despite the fact that Baymark – who was the Declarant at that time – had been terminated.

The District Court's second set of errors stem from the awkward procedural posture of the case. First, the District Court erred by finding that JBWK's claims (raised for the first time in the Complaint JBWK filed in the District Court) were not subject to the alternative dispute provisions of the Declaration because, as a result of the District Court's own procedural re-alignment, JBWK's "claims" were turned into "counterclaims". JA688. This error compounded when the District Court held that the Association, while entitled to enforce the Declaration, could not enforce its initial claims (brought in a state court of limited jurisdiction for events arising prior to 2022) because the Association had not utilized the alternative dispute provisions of the Declaration.

In fact, the Association's base claim – that JBWK was not maintaining its property – was *as JBWK admitted in its answer* in fact submitted to alternative

dispute resolution. JBWK's argument below was that each "claim" was subject to a separate and independent requirement for mediation. While the Association, admittedly, did not later return to mediation for the improperly erected fence or the tree farm, at most that should bar enforcement of those claims and not claim of improper maintenance which had been submitted to mediation in accordance with the Declaration.[4]

It was error for the District Court to conclude that the Association's failure to mediate *some* claims barred its ability to enforce a claim that had been mediated prior to filing the limited state court action.

The final error was the District Court's denial of the Association's motion to compel mediation of all new claims (both the Association's and JBWK's) and then hold that the Association's claims were barred for failure to mediate (even though at least some claims had been mediated) but conclude that JBWK's obligation to mediate was excused.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews the granting of summary judgment *de novo*, "applying

---

[4] The fence and tree farm were, however, subject to the due process hearing and thus the Association followed the alternative dispute resolution procedure recognized by the District Court. JA178, JA685.

the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sigley v. ND Fairmont, LLC*, 129 F.4th 256, 259 (4th Cir. 2025) (quoting *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 705 (4th Cir. 2024)).

## ARGUMENT

### I.  The Association is Entitled to Enforce the Declaration Against JBWK

The District Court correctly determined that JBWK could not operate a tree farm on the Golf Course Parcels in violation of the Declaration.  JA700, JA966. Moreover, the Declaration plainly provides the Association with the authority to enforce the terms of the Declaration.  A plain reading of the Declaration makes clear that the Association has the authority to enforce the terms of the Declaration against JBWK's blatant violations that occurred prior to December 2021 regardless of whether JBWK is classified as an "Owner" or "the Declarant."

Contracts, including community association declarations, "are subject to basic rules of interpretation."  *Tm Delmarva Power v. NCP of Va.*, 263 Va. 116, 119 (2002); *see Sully Station II Community Ass'n v. Dye*, 259 Va. 282, 284 (2000) (applying Virginia contract law to the interpretation of a community association's governing document).  When interpreting contracts, Virginia courts follow the "plain meaning" rule: "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond

the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties." *Berry v. Klinger*, 225 Va. 201, 208 (1983) (quoting *Globe Co. v. Bank of Boston*, 205 Va. 841, 848 (1965)).

"Furthermore, contracts must be considered as a whole 'without giving emphasis to isolated terms.'" *Tm Delmarva Power*, 263 Va. at 119 (quoting *American Spirit Ins. Co. v. Owens*, 261 Va. 270, 275 (2001)). Indeed, the Supreme Court of Virginia has stated,

> In the construction of a contract, it is well settled that the whole instrument is to be considered, and not one provision only, in determining the meaning of any and all its parts; not the words merely in which the provisions are expressed but their object and purpose, as disclosed by the language, by the subject matter, the condition and situation of the parties. Consideration must be given to the general circumstances surrounding or attending its execution, and effect given to each provision, if possible.

*Carpenter v. Gate City*, 185 Va. 734, 740-41 (1946).

Furthermore, a court "must focus on 'the entire instrument' and not 'detached portions,' and should avoid placing too much '"emphasis on isolated terms" wrenched from the larger contractual context.'" *Sweely Holdings, LLC v. R. SunTrust Bank*, 296 Va. 367, 381 (2018) (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 180 n. 8 (2016)). "Effect should be given to every part of the instrument, if possible…and no part thereof should be discarded as superfluous or meaningless." *CNX Gas Co. LLC v. Rasnake*, 287 Va. 163, 167 (2014). "When two

provisions of a contract seemingly conflict . . . they [should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole." *Plunkett v. Plunkett*, 271 Va. 162, 168 (2006) (quoting *Ames v. American Nat'l Bank of Portsmouth*, 163 Va. 1, 39 (1934)).

## A. The Plain Language of the Declaration Authorizes the Association to Enforce the Declaration Against JBWK

JBWK violated the terms of the Governing Documents when it failed to maintain the property, developed a commercial tree farm on the Golf Course Parcels, and installed a spite fence on the Golf Course Parcels. As such, the Association was obliged to enforce JBWK's compliance with the Declaration. Nevertheless, JBWK argues that the requirements of such documents simply do not apply to JBWK because it does not own a piece of residential property. However, when reviewing the plain language of the entire Declaration, the Association has the authority to enforce the Declaration and Governing Documents to hold JBWK accountable for its willful disregard of the restrictions contained in those documents.

At the outset, the Declaration imposes obligations on anyone who owns property in West Neck to comply with the Declaration– regardless of whether that person owns a home or a former golf course. Specifically, Section 1.2 of the Declaration provides, "This Declaration shall be binding upon *all Persons* having any right, title, or interest in any portion of West Neck, their heirs, successors,

successors-in-title, and assigns." JA55 (emphasis added).[5]  In addition to Section

1.2, the following sections clearly impose binding obligations on all Persons holding

title to any of the Properties subject to the Declaration:

**Section 1.1**: "An integral part of the development plan is the creation of West

Neck Community Association, Inc., an association comprised of all owners of real

property in West Neck, to own, operate, and/or maintain various common areas and

community improvements and to administer and enforce this Declaration and the

other Governing Documents referenced in this Declaration." JA55.

**Section 1.3**: "The Governing Documents apply to all Owners and occupants

of property within West Neck, as well as to their respective tenants. guests, and

invitees." JA56.

**Diagram 1.1**: Declaration "creates obligations which are binding upon the

Association and all present and future owners of property in West Neck."

Restrictions and Rules – "govern use of property, activities, and conduct within West

Neck." JA57.

**Section 4.1**: "The Governing Documents establish, as part of the general plan

of development for the Properties, a framework of affirmative and negative

covenants, Easements, and restrictions which govern the Properties. Within that

---

[5] While JBWK may dispute that it is an "Owner" according to the Declaration, JBWK does not dispute that it is a "Person" under the Declaration.  *See* JA60.

framework, the Board and the Members must have the ability to respond to unforeseen problems and changes in circumstances, Conditions, needs, desires, trends, and technology." JA64.

**Section 5.1**: "No structure or thing shall be placed, erected, or installed upon any Unit and no improvements or other work (including staking. clearing. excavation. grading and other site work exterior alterations of existing improvements. erecting or modifying fences or planting or removal of landscaping) shall take place within the Properties except in compliance with this Article and the Architectural Guidelines." JA67.

**Section 6.1(a)**: "Each Owner shall maintain his or her Unit or Private Amenity, respectively, and all landscaping and improvements comprising the Unit or Private Amenity in a manner consistent with the Governing Documents. the Community Wide Standard, and all applicable covenants. unless, in the case of a Unit, such maintenance responsibility is otherwise assumed by or assigned to the Association or a Neighborhood pursuant to any Supplemental Declaration or other declaration of covenants applicable to such Unit." JA72.

**Section 8.2(e):** "all lakes, ponds, streams, and/or wetlands located within the Properties which serve as part of the stormwater drainage system for the Properties, including improvements equipment installed therein or used in connection therewith." JA79.

**Section 8.2(f)**: "The costs associated with maintenance, repair, and replacement of the Area of Common Responsibility shall be a Common Expense; provided, the Association may seek reimbursement from the owner(s) of, or other Persons responsible for, certain portions of the Area of Common Responsibility pursuant to this Declaration." JA80.

**Section 8.11**: "Certain facilities and areas within the Properties may be open for use and enjoyment of the public. Such facilities and areas may include, by way of example: greenbelts. trails and paths, parks, and other neighborhood spots conducive to gathering and interaction, roads, sidewalks, and medians. Declarant may designate such facilities and areas as open to the public at the time Declarant makes such facilities and areas a part of the Area of Common Responsibility or the Board may so designate at any time thereafter." JA88.

**Section 12.5**: "Declarant grants to the Association easements over the Properties as necessary to enable the Association to fulfill its maintenance responsibilities under Section 8.2." JA102.

**Section 12.6**: "Declarant reserves for itself, the Association, and their successors, assigns, and designees, the non-exclusive right and easement, but not the obligation, to enter upon bodies of water and wetlands located within the Area of Common Responsibility to (a) install. operate, maintain, and replace pumps to supply irrigation water to the Area of Common Responsibility; (b) construct,

maintain, and repair structures and equipment used for retaining water; and (c) maintain such areas in a manner consistent with the Community-Wide Standard. Declarant, the Association, and their successors, assigns, and designees shall have an access easement over and across any of the Properties abutting or containing bodies of water or wetlands to the extent reasonably necessary to exercise their rights under this Section." JA103.

Likewise, the Declaration also grants the Association broad powers of enforcement to uphold the requirements of the Governing Documents to all property owners, which the Declaration specifies as one of the primary purposes of the Association. JA55 ("An integral part of the development plan is the creation of West Neck Community Association, Inc.…to administer and enforce this Declaration and the other Governing Documents…."). Section 1.2 also states, "This Declaration, as it may be amended, shall have perpetual duration and *shall be enforceable by* Declarant, *the Association*, any Owner, and their respective legal representatives." JA55 (emphases added). Section 8.4 of the Declaration reads, "All remedies set forth in the Governing Documents shall be cumulative of any remedies available at law or in equity." (JA85). Section 8.5 of the Declaration further states, "The Association may exercise any right or privilege given to it expressly by the Governing Documents, or reasonably implied from or reasonably necessary to effectuate any such right or privilege." JA86. Further, "The Board may institute,

defend, settle, or intervene on behalf of the Association in mediation, binding or non-binding arbitration, litigation, or administrative proceedings in matters pertaining to the Area of Common Responsibility, enforcement of the Governing Documents, or any other civil claim or action." JA86.

The plain language of the Declaration shows that JBWK is bound by the terms of the Declaration because it owns property in West Neck and the Declaration's express terms state that such terms apply to *any* property owner in West Neck. Furthermore, the Declaration expressly provides the Association with the ability to enforce the Governing Documents when a property owner fails to comply with the express requirements of such documents. JA55. An alternate reading of the Declaration would render the language of Sections 1.2, 8.4, and 8.5 meaningless. *See CNX Gas Co.*, 287 Va. at 167 ("Effect should be given to every part of the instrument, if possible…and no part thereof should be discarded as superfluous or meaningless.").

Accordingly, the District Court did not err when it found that the plain language of the Declaration provides the Association with the ability to enforce the Declaration against JBWK.

**B. JBWK's Interpretation of the Declaration is Contrary to its Express Language**

i.    *Sections 6.1 and 8.4 of the Declaration Do Not Eliminate the Obligation of Other Owners of Property to Follow the Declaration*

JBWK's continued attempt to avoid complying with West Neck's Governing Documents rests on a strained reading of those documents. JBWK focuses on two provisions of the Declaration (Sections 6.1 and 8.4) and erroneously contends that the entirety of the Association's enforcement powers is contained within those two isolated sections. *See* Opening Brief, at 23. JBWK's reading of the Declaration, however, ignores Virginia's clear precedent which requires that "contracts must be considered as a whole 'without giving emphasis to isolated terms.'" *Tm Delmarva Power*, 263 Va. at 119. By narrowing its focus to only two provisions of the Declaration, JBWK's interpretation would render a significant portion of the Declaration meaningless, a rendering which is not supported by Virginia law.

a. JBWK Fails to Challenge the District Court's Specific Holding

JBWK argues on appeal that Sections 6.1(a) and 8.4(a) of the Declaration limit "the affirmative obligation to comply with the Governing Documents to 'Owners'" despite the Declaration's unequivocal statements to the contrary. Opening Brief, at 23. Notably, as discussed above, Section 1.2 states, "This Declaration shall be binding upon all Persons having any right, title, or interest in any portion of West Neck, their heirs, successors, successors-in-title, and assigns." JA55. Section 1.3

specifically states that "[t]he Governing Documents apply to all Owners *and occupants of property within West Neck*, as well as to their respective tenants, guests, and invitees." JA56 (emphasis added); *see Occupant*, Black's Law Dictionary (6th ed. 1991) (defining occupant as a "Person having possessory rights, who can control what goes on premises.").

The District Court specifically relied on these two provisions when it held, "The most basic limitation placed on the [Golf Course Parcels], and in fact on all of the Properties, is that it is subject to the Initial Restrictions and Rules. Decl. §§ 1.2-1.3." JA964. The District Court then relied on Sections 1.2 and 1.3 to rule that "the Declaration grants neither the Declarant nor the operator of a Private Amenity *carte blanche* to do whatever they please with the Property they own." JA964. It appears, however, that JBWK has ignored this line of reasoning by the District Court, and JBWK has also entirely ignored Sections 1.2 and 1.3 as those provisions are not referenced anywhere in its Opening Brief. As such, JBWK has waived any argument contending that such provisions do not apply or create affirmative obligations on property owners in West Neck. *See Grayson O. Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument" —even if its brief takes a passing shot at the issue. (internal citations omitted)). Consequently, this Court should affirm the District Court regarding JBWK's obligation to follow the requirements of

the Declaration as JBWK has failed to challenge an independent ground of the District Court's decision – namely, that Sections 1.2 and 1.3 of the Declaration expressly grant the Association enforcement power against JBWK. *See, e.g., United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 456 (4th Cir. 2011) ("[T]he failure of a party in its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge." (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010))).

### b. JBWK Misreads Section 6.1(a) of the Declaration

Sections 6.1(a) and 8.4(a) do not somehow limit the application of the Declaration to only those individuals who own residential property. Section 6.1(a) states as follows:

> General. Each Owner shall maintain his or her Unit or Private Amenity, respectively, and all landscaping and improvements comprising the Unit or Private Amenity in a manner consistent with the Governing Documents, the Community-Wide Standard, and all applicable covenant, unless, in the case of a Unit, such maintenance responsibility is otherwise assumed or assigned to the Association or a Neighborhood pursuant to any Supplemental Declaration or other declaration of covenants applicable to such Unit.

JA72.

JBWK focuses only on the first half of this sentence and ignores the latter half which begins with the word "unless." *See* Opening Brief, at 25. When reading the entire portion of Section 6.1(a) (rather than the first half of the sentence quoted by

JBWK), it is clear that this section provides that an Owner can be held responsible for the maintenance violations on their property *unless* the Association or a Neighborhood agreed to be responsible for the maintenance of that property.

JBWK cherry-picks half of a sentence and then contends that the partial section renders meaningless the rest of the Declaration's express obligations imposed on property owners. *See Am. Spirit Ins. Co. v. Owens*, 261 Va. 270, 275 (2001) ("[W]e construe the contract as a whole, without giving emphasis to isolated terms."). As discussed in Part I(A) of this Brief, there are at least twelve other provisions in the Declaration which expressly impose obligations on any owner of property in West Neck regardless of that owner's status as an "Owner" or a "Unit" or a "Private Amenity" or any other status. *See* JA55 (§§1.1 and 1.2); JA56 (§ 1.3); JA57 (Diagram 1.1); JA64 (§ 4.1); JA67 (§ 5.1); JA72 (§ 6.1(a)); JA79 (§ 8.2(e)); JA80 (§ 8.2(f)); JA88 (§ 8.11); JA102 (§ 12.5); JA103 (§12.6). At bottom, JBWK's interpretation of this limited portion of Section 6.1(a) would render the express obligations outlined to *all* property owners in at least twelve separate sections of the Declaration wholly meaningless. Accordingly, this Court should reject JBWK's interpretation and affirm the District Court.

JBWK also ignores the words "and Private Amenity" in Section 6.1(a). JBWK argued that its Golf Course Parcels were a Private Amenity and yet tries to avoid the obligations that come with being a Private Amenity. The language in

Section 6.1(a) is admittedly awkward, and the district court (correctly) found it unnecessary to rely on the awkwardly worded provision. JBWK, however, despite recognizing that one awkwardly worded sentence out of 60-plus pages of the Declaration is its only hope cannot and does not even try to reconcile the use of the words "Private Amenity" in section 6.1(a). The simplest reading of section 6.1(a) is that the owner[6] of a Private Amenity must maintain its property – and that interpretation under JBWK's own argument would include JBWK's property.

### c. JBWK's Interpretation of Section 8.4(a) Impermissibly Adds Language to the Declaration

Section 8.4(a) of the Declaration states in relevant part: "Every Owner and occupant of a Unit shall comply with the Governing Documents. The Board may impose sanctions for violation of the Governing Documents after notice and a hearing in accordance with the procedures set forth in Section 3.24 of the By-Laws." JA84. Section 8.4(a) then lists several potential sanctions. JA84.

While JBWK cites the entire portion of this section in its Brief, JBWK mistakenly adds language to this section that simply does not appear anywhere in

---

[6] It seems logical that the use of a capital "O" in section 6.1(a) is a scrivener's error. Otherwise, there is no reasonable way to reconcile the words Private Amenity in the sentence – and JBWK doesn't even try. However, because the Declaration contains numerous unambiguous provisions demonstrating that the Association has the right and obligation to enforce the Declaration as to all the Property subject to the Declaration, neither the district court, nor this Court needs to resolve the ambiguity in Section 6.1(a) to find that the Association can enforce the Declaration against JBWK.

the Declaration. JBWK argues that Section 8.4(a) somehow limits the Association's enforcement power to only bring actions against "Owners" – those who own residential property at West Neck. JBWK, however, fails to identify any language in the Declaration that makes any such limitation. JBWK reads Section 8.4(a) as if it were to say, "***Only an*** Owner and occupant of a Unit shall comply with the Governing Documents." *See* JA84.

Section 8.4(a), however, does not make any such limitation, and this Court cannot and should not accept JBWK's invitation to read that language into the Declaration. *See Southerland v. Estate of Southerland*, 249 Va. 584, 590 (1995) ("[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984))). Section 8.4(a) does not somehow exclude all other owners of property within West Neck merely because it references owners of residential property in one section regarding enforcement.

Likewise, JBWK's reliance on the case *Levine v. Employers Ins. Co. of Wausau* is also misguided. 887 F.3d 623 (4th Cir. 2018). In *Levine*, this Court analyzed whether an uninsured/underinsured motorist ("UIM") policy applied in an instance where the policyholder was driving a rented vehicle. *Id.* at 627. When reviewing the insurance policy, this Court affirmed the lower court's decision to deny coverage because the plain language of the policy limited UIM coverage to

"Owned Autos Only." *Id.* at 629. Given that the plaintiff had rented the vehicle (and therefore did not own the vehicle), the plain language of the policy clearly excluded the plaintiff from coverage. *Id.*

In this case, unlike in *Levine*, Section 8.4 of the Declaration does not explicitly state that the Governing Documents apply to "Owners" *only*. Instead, the Declaration clearly states that "the Governing Documents apply to all Owners *and occupants of property within West Neck*, as well as to their respective tenants, guests, and invitees." JA56 (emphasis added). The Declaration does not contain the same limiting language that the UIM policy from *Levine* contained and, therefore, JBWK's reliance on this precedent is simply misplaced.

Section 8.4 admittedly focuses more (though not exclusive) attention towards residential property. This is understandable because there are over 900 residential property owners and only 1 non-residential property owner. ECF 65, at 1. Further, the Declaration expressly states the "intention that the Association and the Private Amenities shall cooperate to the maximum extent possible in the operation of the Properties and the Private Amenities. Each shall reasonably assist the other in upholding the Community-Wide Standard as it pertains to maintenance and the Architectural Guidelines." JA113 (§17.10). JBWK's breach of its fundamental obligation to cooperate with the Association in upholding the Community-Wide Standard as it pertains to maintenance is the crux of the issue.

29

In addition, JBWK ignores Section 8.5 of the Declaration, which grants the Association broad powers to "exercise any right or privilege given to it expressly by the Governing Documents, or reasonably implied from or reasonably necessary to effectuate any such right or privilege." JA37. Given the clear and unambiguous intent of the Declaration – expressed in countless sections – that the Association enforce the provisions of the Declaration against all Property subject to the Declaration, it was entirely correct for the District Court to decline to adopt JBWK's strained reading, and instead hold that the Association had both express and implied powers to enforce the Declaration against JWBK.

> d. JBWK improperly seeks to use specific provisions of the Declaration to negate general provisions of the Declaration even where they do not conflict and can be readily harmonized.

JBWK's reliance on the principle that specific provisions of a contract govern over general provisions of a contract is simply misguided in this case. *See* Opening Brief, at 21. The Supreme Court of Virginia has consistently held, "When two provisions of a contract *conflict with one another*, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general." *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373 n. 9 (2017) (emphasis added). Accordingly, this canon of interpretation only applies when the two provisions conflict with one another or cannot exist simultaneously. *See* 5 Corbin on Contracts

§ 24.15 ("To the extent possible, the general and specific provisions should be reconciled, and reasonable effect should be given to both. *If there is an irreconcilable conflict* between the two, specific provisions prevail over general provisions."). Furthermore, even "[w]hen two provisions of a contract seemingly conflict . . . they [should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole." *Plunkett*, 271 Va. at 168.

Here, Sections 6.1(a) and 8.4(a) do not conflict with the rest of the Declaration, but can – and should be – read together as part of the entire Declaration. Section 6.1(a) provides that an Owner is responsible for the maintenance of his Unit unless the Association or a Neighborhood assumes that responsibility. JA72. Furthermore, while the Association may enforce the obligations of the Declaration against all property owners at West Neck, Section 8.4(a) affords owners of "Units" or "Private Amenities" an additional right that is not afforded to other owners of property – namely, the right to notice and a hearing. JA84. These two provisions simply do not conflict with the rest of the Declaration and, therefore, JBWK's reliance on the maxim that specific provisions control over general provisions is simply inapplicable in this instance. The two provisions relied upon by JBWK discuss separate rights and obligations that are not addressed in other provisions of the Declaration. Furthermore, the plain language of these provisions do not negate

the obligations of property owners or the powers of the Association that are expressly identified throughout the Declaration.

It is also worth noting that JBWK alleges that Section 6.1(a) is a "specific" provision of the Declaration when Section 6.1(a) is actually introduced and labeled as a "General" provision in the Declaration itself. JA72. JBWK has selectively omitted the title of this subsection in its Opening Brief (along with the second half of that section) in an attempt to torture the interpretation to its viewpoint. *See* Opening Brief, at 25.

In short, neither Section 6.1(a) nor Section 8.4(a) expressly limit the unequivocal obligations that the Declaration places on all property owners, nor do these sections prohibit the Association from carrying out its primary purpose of enforcing the Declaration against property owners of West Neck. Accordingly, the District Court properly found that the Declaration grants the Association the power to enforce the Declaration against all property owners subject the Declaration.

> ii. *Section 11.3 of the Declaration Does Not Limit the Association's Enforcement Power*

Section 11.3 of the Declaration likewise does not bar the Association from enforcing violations of the Declaration. Section 11.3 of the Declaration provides:

> Every Person that acquires any interest in the Properties acknowledges that West Neck is a master planned community, the development of which is likely to extend over many years, and agrees not to protest, challenge, or otherwise object to (a) changes in uses or density of

> property outside the Neighborhood in which such Person
> holds an interest, or (b) changes in the Master Plan as it
> relates to property outside the Neighborhood in which
> such Person holds an interest.

JA98.

First, nothing in Section 11.3 could even remotely be construed to limit the Association's right to administer and enforce existing covenants and restrictions contained in the Declaration or uses that violate currently established zoning ordinances. It cannot be reasonably interpreted to mean that the Association must allow an illegal use or other direct violation of the Declaration.

Second, JBWK's reading of Section 11.3 would eliminate the sections of the Declaration which unequivocally state that the Declaration and Governing Documents apply to owners and occupants of property, and that the Association may enforce such documents. *See CNX Gas Co.*, 287 Va. at 167 ("Effect should be given to every part of the instrument, if possible…and no part thereof should be discarded as superfluous or meaningless.").

JBWK's interpretation simply does not make sense. *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 200 (2017) ("Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" (quoting *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302, 6 Fed. Appx. 52 (1st Cir. 2001))). Section 11.3 appears to be directed at silencing opposition to rezoning

or other municipal approvals for changes in use or density – issues not presented in this case.

Further, assuming Section 11.3 is an enforceable restriction on free speech, it does not limit the Association's rights to object to a change in use because the Association has an interest in all the Properties subject to the Declaration. In the context of Section 11.3, the term "interest" can only mean a legal relationship between the Person and property. *See*, *e.g.*, Restat 1st of Property, § 5. Section 5 of the Restatement 1st of Property describes "interest" as it relates to property as:

> c. Interest in land or other thing. There are rights, privileges, powers and immunities with regard to specific land, or with regard to a thing other than land, which exist only in a particular person. By virtue of the fact that a person has these special interests, other than and in addition to those possessed by members of society in general, he occupies a peculiar and individual position with regard thereto.

Interests of this type constitute the chief subject matter of this Restatement, and, when the affected thing is land, are designated herein as "interests in land." The Association has easements over JBWK's Golf Course Parcels as necessary to access any of the lakes and/or ponds on the Property for the purposes of maintenance and irrigation. JA103 (§ 12.6.). Accordingly, the Association has an 'interest' in JBWK's property and has every right to protect its interests. As such, the Association may still object to an attempted change in JBWK's use of the Golf Course Parcels because the Association "holds an interest" in JBWK's Golf Course Parcels. As

such, the District Court did not err when it found that Section 11.3 does not prevent the Association from enforcing the Declaration against JBWK.

The District Court's ruling further avoided the need to determine whether Section 11.3 is so overbroad in its limitation of free speech to be unenforceable. JBWK's interpretation of Section 11.3 would prohibit a West Neck property owner from objecting to the use of *any* property outside of their own neighborhood – even property located hundreds or thousands of miles outside of West Neck. For example, if "[e]very Person that acquires any interest in the Properties…agrees not to protest, challenge, or otherwise object to…changes in uses or density of property outside of the Neighborhood in which such Person holds an interest," then every single such Person has agreed to stay silent regarding *any* property *in the world* that is not located within their Neighborhood at West Neck. Under JBWK's interpretation, an owner in West Neck could not protest, challenge or object to a change in zoning to a property down the street from West Neck, a property in neighboring Norfolk, Virginia, a property in northern Virginia, or even property in any other state in the United States. In Virginia, restrictive covenants, such as those contained in Section 11.3 are enforceable only if they are reasonably related to the property and do not violate public policy. *See, e.g.*, *Taylor v. Northam*, 300 Va. 230, 251, 862 S.E.2d 458, 468 (2021).

Accordingly, the District Court properly concluded that Section 11.3 does not preclude the Association from enforcing the Declaration.

## C. The Declaration Provides for Implied Enforcement Powers

On appeal, JBWK has not challenged the District Court's findings that it is bound by the Declaration and Governing Documents and that it has violated such documents (JA966), yet JBWK still argues that it cannot be held accountable for such violations. JBWK does not dispute a majority of the District Court's rulings from the renewed motions for summary judgment, and therefore JBWK has waived any challenge to those rulings. *See Grayson O. Co.*, 856 F.3d at 316 ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). As such, JBWK does not dispute the following:

(1) "the Declaration requires that all Properties, including the Property here, be used for residential, recreational, or related purposes" (JA964);

(2) "the Property is not being used for a residential, recreational, or related purpose" and that "JBWK's use of the Property violates the Restrictions and Rules" (JA966);

(3) that JBWK "is entitled to plant trees on the Property so long as that activity is consistent with the Governing Documents, Community-Wide Standard, and all applicable covenants" (JA968); and

(4) that "the Property must be used *only* for residential, recreational, and related purposes and must otherwise comply with the Declaration" (JA969).

Despite its waiver that it is bound by the Declaration and Community-Wide Standard and that it has violated the Rules and Regulations, JBWK nevertheless argues that the Association does not have the power to hold JBWK accountable for such flagrant violations. As argued above, this argument fails because the Declaration expressly provides the Association with enforcement powers. JA55, JA55(§ 1.2), JA85(§ 8.4); JA86 (§ 8.5). In addition, the Declaration states that the Association's powers are not limited to those expressly outlined in the Declaration. Instead, as stated above, Section 8.5 states, "The Association may exercise any right or privilege given to it expressly by the Governing Documents, or reasonably implied from or reasonably necessary to effectuate any such right or privilege." JA86.

The Association certainly has the right and obligation to "enforce this Declaration and the other Governing Documents," and such a right is "an integral part of the development plan…." JA55. Indeed, the Declaration provides "a flexible system of standards and procedures for the overall development, expansion, administration, maintenance, and preservation of West Neck as an age-restricted master planned community." JA55. When any property owner or occupant of West Neck willfully violates the Governing Documents which are designed to uphold the overall development and preservation of West Neck as an age-restricted and master planned community, the Association must be able to enforce such restrictions to

align the property with the overall development plan of the community. Accordingly, even if the Declaration does not expressly provide the Association with enforcement power (which it does), the Association's enforcement power is implicit under Section 8.5 because such power is necessary to effectuate its right and obligations to uphold the overall development and preservation of West Neck, a right that is expected from all purchasers of property within the development when they purchase. JA86.

Section 8.5 aligns with a principle of contract interpretation that has been readily endorsed by the Supreme Court of Virginia. "If, however, it can be plainly seen, from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect, in other words, if it be a necessary implication from the provisions of the instrument, the law will imply the obligation and enforce it." *Southern R. Co. v. Franklin & P.R. Co.*, 96 Va. 693, 696 (1899). When reading the entire Declaration, it is clear that the Association's power to enforce the Declaration and Governing Documents against all property owners is absolutely necessary to carry out the documents' intention of maintaining a planned, age-restricted community.

In short, while the Declaration expressly provides for the Association's enforcement power against JBWK's blatant violations, the Declaration also implies

such a right. The Declaration clearly implies that the Association – the body created to uphold the Declaration – has the power to enforce the requirements of the Declaration and Governing Documents to prevent such violations which JBWK no longer contests.

## II.    JBWK Did Not Satisfy the Explicit Contractual Requirements to Become the Declarant.

JBWK sought to be recognized as the "Declarant," and it argued that it became the "Declarant" when Baymark assigned over the Declarant rights. The Declaration, however, requires a successor Declarant satisfy two requirements to become a successor Declarant. First, one must "take[] title to any portion of the property [at West Neck] for the purpose of development and/or sale." JA59. Second, one must be "designated as Declarant in a Recorded instrument the immediately preceding Declarant executes." JA59. JBWK has failed to carry its burden in showing that it (1) took title of the Property for the purpose of development and/or sale and (2) that it recorded an instrument that designated JBWK as the Declarant. In addition, material facts are genuinely in dispute on both issues, and summary judgment was therefore improper at this stage.

### A. The District Court Erred in Ruling on Summary Judgment that JBWK Took Title for the Purpose of Development and/or Sale

JBWK failed to meet its burden to establish that it took title to the Property for the purpose of development and/or sale, and the District Court prematurely

granted summary judgment on this issue. *See Huggins v. Lueder*, No. 1:19-CV-0433-CAP, 2020 U.S. Dist. LEXIS 145784. *15-*16 (N.D. Ga. July 8, 2020) (noting that the movant had the initial burden at summary judgment to demonstrate it met the definition of a Declarant). The District Court erred by failing to view the evidence in the light most favorable to the Association – the non-moving party on this issue – when it ignored sworn testimony that contradicted JBWK's assertion that WCC had acquired the Property for the purpose of development and/or sale. JA950. The District Court then erred by granting summary judgment for JBWK on this issue despite the parties' genuine dispute over the material fact of whether JBWK acquired title with the intent of developing or selling the Golf Course Parcels because JBWK somehow acquired WCC's intention for purchasing the property when the two entities merged. JA950.

When examining whether WCC purchased the property "for the purpose of development and/or sale", this Court (just like the District Court) must examine the subjective intentions of JBWK regarding its reasoning for why it purchased the Golf Course Parcels. "[D]etermining intent is fact-intensive, and when the circumstantial evidence of a person's intent is ambiguous, the question of intent cannot be resolved on summary judgment." *General Analytics Corp. v. CAN Ins. Co.*, 86 F.3d 51, 54 (4th Cir. 1996). Moreover, "a court should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and

the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). The Supreme Court has held that a district court commits reversable error at the summary judgment stage "[b]y failing to credit evidence that contradicted some of its key factual conclusions" and by "resolv[ing] disputed issues in favor of the moving party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)

Here, JBWK's intent for the property was abundantly clear. JBWK did not take title to the Golf Course Parcels for the purpose of development and/or sale, but instead JBWK acquired the property for its agricultural uses. *See* JA567 (JBWK's Business Plan as an agri-business that will produce "natural silage" and "cultivated hay products"); JA601 (Business License Application stating that it "will be growing and selling sod and other various plants to other businesses"); JA607-608 (Interrogatory regarding agricultural purpose). Furthermore, JBWK's deposition designee, Christopher Coleman, confirmed that the purpose of their acquisition of the property was to conduct agricultural related business such as the operation of a tree farm. JA551.[7]

---

[7] The Joint Appendix contains the draft transcript of Mr. Coleman's September 25, 2023 deposition that was attached as Exhibit 1 to the Association's Brief in Opposition to JBWK's Motion for Summary Judgment (ECF 49-1). Relevant portions of the final version of this transcript were attached as Exhibit 3 to the Association's Renewed Motion for Summary Judgment (ECF 65-3). Consequently, the District Court had Mr. Coleman's September 25, 2023 testimony before it when ruling on both the initial and the renewed motions for summary judgment.

On the other hand, WCC's intentions (JBWK's predecessor) are anything but clear based on the record. While the District Court found that WCC "intended to sell the Property when the Property was originally purchased," JBWK's corporate testimony tells an entirely different story. JA950. Contrary to the lower court's finding, Mr. Coleman, acting as JBWK's corporate designee, testified that WCC acquired the property for speculation. JA551. Mr. Coleman stated that he was engaged by both WCC and JBWK, and he specified that "the initial engagement was WC Capital because JBWK didn't exist at that point." JA551. Coleman testified that when WCC purchased the Golf Course Parcels, "there was no definite plan at any point" on what WCC would do with the property. JA548-549, JA711.

Despite unequivocally testifying on September 25, 2023 that WCC had "no definite plan at any point" (JA549, JA771) and that WCC acquired the property for "speculation" (JA551), Coleman miraculously changed his tune in his June 7, 2024 affidavit that was prepared days before JBWK filed its renewed motion for summary judgment. JA795. Coleman claimed that "When WCC purchased the Property, it was to resell the Property," although he did not testify to this during JBWK's prior deposition. JA795.

What Mr. Coleman did testify was that the purpose for the merger of WCC and JBWK was to merge WCC into the "operating company," to continue farming the property and building a tree farm. JA711. Thus, *even if* WCC's original intent

was to develop or sell the Golf Course Parcels, Mr. Coleman's testimony shows that intent was abandoned and that is directly what caused the merger with JBWK so that JBWK could continue its *business operations*. JBWK's story to the City and others had always been that its purpose was to conduct agricultural activities. JA567 (JBWK's Business Plan), JA601 (business license application), JA711 (JBWK corporate testimony); ECF 68-1, p. 14:7-22; p.15:1-17.

In its analysis, the District Court ignored JBWK's September 25, 2023 corporate testimony about its own predecessor's intentions entirely. Instead, the Court focused solely on the self-serving affidavits of Coleman and David LaClair that were prepared days before the motion for summary judgment was filed. *See* JA949-951. As such, the District Court has made its own credibility determination at the summary judgment stage by favoring the testimony of two witnesses over JBWK's statements about its own predecessor entity's intentions. The District Court should have allowed a jury to make this credibility determination at trial, and it was error for the Court to grant summary judgment for JBWK based on this disputed fact. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) ("The court therefore cannot weigh the evidence or make credibility determinations."); *see also* Fed. R. Civ. P. 56 Advisory Committee's Note (1963) ("Where an issue as to a material fact cannot be resolved without observation of the

demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

The record evidence clearly shows that summary judgment should not have been granted in JBWK's favor as there is a genuine dispute over JBWK's intent to sell the Golf Course Parcels. When viewing the evidence in the light most favorable to the non-moving party (the Association), it is clear that a jury could discredit Coleman's self-serving affidavit and believe his earlier testimony that was given on behalf of JBWK. Coleman did *not* testify during the deposition that WCC purchased the Property for development or for sale, and he made this statement *on behalf of JBWK*. *See* Fed. R. Civ. P. 30(b)(6). Instead, JBWK's binding testimony is that its own predecessor purchased the property for "speculation" and that it did not have a definite plan at any time regarding what it would do with the property.

Accordingly, there is material evidence in the record which clearly disputes any contention that (1) WCC purchased the property with an intention to develop and/or sell the Golf Course Parcels and (2) that JBWK acquired the property with any intention other than to cultivate the land for agricultural purposes. The District Court erred in prematurely determining at the summary judgment stage that JBWK somehow possessed the intention to sell or develop the property as material facts certainly show otherwise.

In addition, insofar as JBWK contends that its use of the Golf Course Parcels as a commercial tree farm constituted an intention to develop the property, such an argument does not hold weight. Agricultural use is not "selling" the Golf Course Pracels, nor does it constitute "developing" the Golf Course Parcels. Although not defined by the Declaration, the Court need not look any further than Va. Code § 15.2-2201, where Virginia defines "development" in the land zoning and planning context. According to the Code,

> 'Development' means a tract of land developed or to be developed as a unit under single ownership or unified control which is to be used for any business or industrial purpose or is to contain three or more residential dwelling units. *The term 'development' shall not be construed to include any tract of land which will be principally devoted to agricultural production.*

*Id.* (emphasis added).

Consequently, this Court should reverse the District Court's determination that JBWK has assumed the Declarant status because JBWK (and WCC) did not acquire the property for purpose of development and/or sale.

**B. The District Court Erred in Ruling on Summary Judgment that JBWK was Designated as a Declarant in a Recorded Instrument.**

JBWK did not satisfy the second requirement that it be designated as a Declarant in a Recorded instrument until, at best, October 3, 2023 when it filed the "Confirmation of Assignment" with the Clerk of the Virginia Beach Circuit Court. JA652. And even that document was not indexed against the parcels subject to the

45

Declaration but only the Golf Course Parcels. JA647. Consequently, if JBWK is even considered to be the Declarant, it could only be considered the Declarant after the Association's 2022 Amendments were enacted. Therefore, the District Court erred by determining that JBWK is the Declarant and by determining that the Association's Amendments are inactive because they were not approved by the Declarant.

i. *JBWK is Not the Declarant Because it Failed to Properly Record an Instrument Designating it as the Declarant*

The Declaration requires the Declarant take title of the property for the purpose of development and/or sale, and that the successor Declarant be "designated as Declarant in a Recorded instrument the immediately preceding Declarant executes." JA59. Such instrument must be filed in the Clerk's Office of the Circuit Court of the City of Virginia Beach, because that is the office which "affect[s] title to real estate" at West Neck. JA61 (Definition of "Recorded"). JBWK did not record this instrument (the "Confirmation of Assignment") until *after* it had moved for summary judgment and *after* the Association pointed out JBWK's failure to satisfy the second requirement outlined in the Declaration (e.g. that it record a document designated it as the Declarant in its Brief in Opposition to JBWK's motion for summary judgment.) *See* Dkt. 49, at 22. JBWK's efforts to cure the fatal flaw in its argument only *after* the Association sought compliance with the Declaration, *after*

litigation was well underway and *after* the Association had amended the Declaration is disingenuous and too late.

Section 11.7 of the Declaration makes it clear as to why an express designation is more than a mere formality. First, it states that "[a]ny or all of Declarant's rights and obligations . . . may be transferred in whole or in part to other Persons[.]" JA99. It further notes that the Declarant is not precluded "from permitting other Persons to exercise, on a one time or limited basis, any right reserved to Declarant in this Declaration where Declarant does not intend to transfer such right in its entirety[.]" JA99. This provision contemplates the possibility of more than one Person possessing Declarant powers at any given time. Stated differently, a Person can exercise certain specific Declarant powers without being the Declarant. Thus, the requirement that a successor Declarant be "designated as Declarant in a Recorded instrument the immediately preceding Declarant executes" is essential to deciphering between the Declarant and an assignee. JA59. Recording pertinent documents is not an arbitrary requirement; rather, the Declaration contemplates this process to ensure that key transactions are evidenced in the land records to properly put others, like the Association, on notice. Absent proper recordation, the Association cannot be held accountable for deciphering intent of what may (or may not) have occurred behind the scenes.

*ii.*     *The August 2022 Amendments are Valid*

The District Court ruled that the Association's August 16, 2022 Amendments were invalid because the Declarant had not consented to the Amendments. However, at the time that the Association's Amendments were approved by its voting members, West Neck did not have a Declarant.  As of November 2020, Baymark – who was then the Declarant – had been administratively terminated by the Virginia State Corporation Commission.  JA486.  In other words, Baymark did not exist as a legal entity until it was reinstated on August 24, 2022. JA447. Consequently, the Association did not need the consent of a non-existent party to validly enact new Amendments on August 16, 2022.

The District Court's error lies in its reasoning that JBWK became the Declarant "in or before July 2022" – one month prior to the enactment of the August 2022 Amendments.  JA954.  As argued above, however, by delaying its recording of an instrument declaring it as the Declarant until October 2023, JBWK could not become the Declarant until well after the 2022 Amendments were validly enacted by the Association (assuming *arguendo* that JBWK satisfied the other criteria to become the Declarant, which they do not).  Therefore, West Neck did not have a Declarant at the time that the Amendments were enacted, and the District Court erred when it invalidated such Amendments on summary judgment by holding that JBWK

became the Declarant before it actually recorded an instrument designating it as the Declarant. Accordingly, the August 2022 Amendments to the Declaration are valid.

### III. The District Court Erred in Barring the Association's Enforcement of the Declaration For Failure to Mediate, While Also Denying the Association's Motion to Dismiss Seeking Mediation, and Refusing to Bar JBWK's Unmediated Claims.

As a threshold matter, the Association's enforcement action filed in the state general district court is exempt from the mediation requirement. JA108 (exceptions to alternative dispute resolution clauses in §16.1(b)(i)-(iv)). The Association, prior to re-filing the warrant in debt in the Virginia Beach state court, provided JBWK notice of a due process hearing. JA14, JA44. JBWK admitted that it attended this hearing with counsel present. JA44.

Accordingly, the requirements of the Bylaws regarding Due Process were met (JA296) and the Court erred in finding otherwise. While the Association *initially* filed a warrant in debt prior to conducting a due process hearing, when JBWK raised the deficiency, the Association non-suited the first warrant in debt and conducted a Due Process hearing, which JBWK attended. JA884. Thereafter, the Association was entitled to proceed with an action to obtain an injunction requiring JBWK to maintain its Golf Course Parcels and to collect the $900 fine imposed by the Association following the Due Process Hearing. These actions are expressly exempt from the alternative dispute resolution procedure in the Declaration. JA257. The District Court seemingly held that the Association was required to do *a second* Due

Process hearing before re-filing the warrant in debt. JA962. There is simply no requirement that the Association conduct multiple due process hearings for one ongoing violation. When JBWK objected to the Association's filing the warrant in debt without a due process hearing, the Association non-suited the first warrant, held a due process hearing, which JBWK attended. The Association was thereafter entitled to file its claim to enforce the penalty and obtain injunctive relief. The District Court erred in denying the Association the relief requested.

The District Court further erred in denying the entirety of the Association's claims for enforcement for failure to comply with the mediation provisions. In fact, as JBWK conceded "the Association and WC Capital participated in mediation in September of 2021 with respect to the Association's complaint that the grass was not being cut frequently enough" JA47. That is the issue – JBWK's failure to maintain its property – that the Association brought to a due process hearing, and subsequently filed an action in Virginia Beach General District Court to enforce. At that time, JBWK had not asserted a "claim" that it was the successor Declarant, nor had JBWK asserted a "claim" that the Association's Amendments were invalid. Those claims were first made by JBWK when it filed its complaint in matter 2:22-cv-00466 in November 2022. *See JBWK, LLC v. West Neck Community Association,* Case No. 2:22-c-v-00466 (ECF 1).

JBWK took the position that the Association's mediation of JBWK's failure to maintain its Golf Course Parcels was insufficient to satisfy the mediation requirement for other Association claims, such as the fence and tree farm. JA47. JBWK further argued that each individual "claim" asserted by a party must be submitted to mediation. JA47. In November 2022, JBWK filed claims that it had never submitted to mediation – its "claim" that it was "Declarant" and its "claim" that the amendments were invalid. *See JBWK, LLC v. West Neck Community Association,* Case No. 2:22-c-v-00466 (ECF 1). Under JBWK's own argument, those "claims" should have been submitted to mediation. They were not. Nor were they, as the District Court ruled, actually "counterclaims" – they were only counterclaims because the District Court consolidated JBWK's claim with the Association's claim and then unilaterally reorganized the pleadings, directing JBWK to files its "claims" as "counterclaims".

If the case had been consolidated under the first filed federal case, 2:22-cv-00466, then the Association would be the party excused from submitting its claims to mediation. It is unreasonable – and error – to base substantive rights regarding mediation on the administrative procedural alignment of the cases, especially when the re-alignment was determined unilaterally by the court.

The Association sought to have JBWK's newly asserted claims dismissed so that the parties could pursue mediation as required by the Declaration. The District

Court erroneously denied the Association's motion. The Declaration provides that "each Bound Party agrees not to file suit in any court with respect to a Claim described in subsection (b), unless and until it has first submitted such Claim to the alternative dispute resolution procedures set forth in Section 16.2" of the Declaration. JA108. JBWK filed its Complaint in 2:22-cv-00466 without ever submitting the claims asserted in the Complaint to alternative dispute resolution.

The Eastern District of Virginia has previously ruled on this very issue. In *Tattoo Art, Inc. v. TAT Int'l, LLC*, the Defendant brought a motion to dismiss the Complaint filed by Plaintiff, because the Licensing Agreement from which the claims arose, contained a mediation provision that stated, "mediation of any dispute arising from this Agreement. . . ." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 711 F. Supp. 2d 645, 649 (E.D. Va. 2010). The provision required mediation as a condition precedent to "filing any action to enforce this Agreement." *Id*. 650-51. The court held that the mediation provision in the Agreement made the mediation a condition precedent to filing of a lawsuit. *Id*. at 652. Therefore, by failing to request mediation, Plaintiff could not file suit and Defendants' motion was granted. *Id*. at 651.

The Eastern District Court reiterated the holding from *Tattoo Art* in *Dominion Transmission, Inc. v. Precision Pipeline, Inc*., 2013 U.S. Dist. LEXIS 159164, *2 (E.D. Va. November 5, 2013). In *Dominion Transmission*, the contract between the two parties provided for a multi-tiered, progressive alternative dispute resolution

process ("ADR") before commencing litigation. The final step in the ADR required the parties to proceed to mediation governed by the American Arbitration Association standards. *Id*. The Plaintiff filed suit against the Defendant without having sought to engage in mediation. The Court held that the contract provision unambiguously required that Dominion submit any dispute to mediation prior to commencing litigation. *Id*. at *18. The Court dismissed the matter and stated that, "This Court will not substitute a judicial resolution for the parties' dispute when a valid, agreed-upon contractual remedy properly governs." *Id*. The Court further went on to state that until the Plaintiff satisfies the mandatory mediation condition precedent, the dispute between the parties should not be before the Court. *Id*.

Here, just as in *Tattoo Art* and *Dominion Transmission*, the contract contains an unambiguous provision requiring (a) written notice of a "Claim", (b) negotiation, and (c) mediation of such claim prior to the initiation of a lawsuit. It is undisputed that JBWK failed to give the required notice of claim, failed to negotiate, and failed to submit their two claims, namely that it was somehow, without notice, the Declarant with Declarant rights and that the August 2022 Amendments were invalid, to mediation. Just as in *Tattoo Art* and *Dominion Transmission*, the contract at issue in this case (the Declaration) sets out clear, unequivocal prerequisites to the filing of an action and, because JBWK failed to satisfy those prerequisites its counterclaim should have been dismissed.

Further, the District Court erred in concluding that adjudication of JBWK's claims were necessary to adjudicate the Association's claims. JA703. JBWK's claims involved actions occurring in the summer of 2022, while the Association's claims concerned JBWK's activities in 2021. *Even if* JBWK was the successor Declarant as of July 2022 as erroneously found by the District Court, that status had no effect on the failure of JBWK to maintain the Golf Course Parcels in 2021. And, even if, the 2022 Amendments were invalid, they were in any event inapplicable to JBWK's failure to maintain the Golf Course Parcels in 2021.

The District Court erred by not equally enforcing the requirement for mediation of claims. Both parties should either submit their claims to mediation (as previously moved by the Association), the mediation should be waived for both parties, or the failure to mediate should bar both parties' claims. What's good for the goose is good for the gander. The District Court erred when it applied the mediation requirements only to the Association and then refused to apply the same provision to JBWK because of the procedural posture that *the District Court* had unilaterally created after consolidating JBWK's Complaint with this suit.

## CONCLUSION

For the foregoing reasons, the Association asks that this Honorable Court affirm the District Court's judgment declaring that JBWK cannot do whatever it likes with the Golf Course Parcels. In addition, this Court should reverse the District

Court's premature grant of summary judgment because the record clearly contains disputed facts concerning WCC's (and therefore JBWK's) intent when it purchased the Golf Course Parcels.  Furthermore, the Association also requests that this Court reverse the District Court's determination that the Association could not bring the present enforcement action, and that JBWK did not also have to follow the same mediation requirements.

## REQUEST FOR ORAL ARGUMENT

Appellee respectfully requests oral argument.

Respectfully submitted,

WEST NECK COMMUNITY ASSOCIATION, INC.


By:  /s/Jeffrey A. Hunn
Counsel

Mark R. Baumgartner
Jeffrey A. Hunn
Scott B. Ingram
PENDER & COWARD, PC
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Phone: (757) 490-6293
Fax: (757) 497-1914
mrb@pendercoward.com
jhunn@pendercoward.com
singram@pendercoward.com
*Counsel for Appellee/Cross-Appellant*

**CERTIFICATE OF COMPLIANCE WITH**
**TYPEFACE AND LENGTH LIMITATIONS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e) because:

   [x] This brief contains 12,834 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   [x] This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point style.

Dated: July 28, 2025

*s/Jeffrey A. Hunn*
Jeffrey A. Hunn

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on the 28th day of July 2025, I have filed the required copies of the foregoing Response Brief of Appellee and Opening Brief of Cross-Appellant with the Clerk, United States Court of Appeals for the Fourth Circuit electronically using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

*s/Jeffrey A. Hunn*
Jeffrey A. Hunn
